WILLIAM T. SUTTLE v. B. M. WOLD, *et al.*

158 So. 447.

Division B.

Opinion Filed January 1, 1935.

*M. L. Esarey,* for Appellant;

WHITFIELD, P. J.—Suit was brought by an assignee mortgagee to foreclose a mortgage lien given by husband and wife upon homestead real estate, a defense being that the execution of the mortgage was not acknowledged by the wife before any officer as required by law. Decree was rendered for defendants. Complainant appealed.

The Constitution provides that:

"The homestead 'real estate shall not be alienable without the joint consent of husband and wife when that relation exists.' Sec. 1, Art. X.

"Nothing in this article shall be construed to prevent the holder of a homestead from alienating his or her homestead so exempted by deed or mortgage duly executed by himself or herself, and by husband and wife, if such relation exists." Sec. 4, Art. X.

The statutes of the State contain the following:

"Any married woman owning real property may sell, convey or mortgage it as she might do if she were not married, provided her husband join in such sale, conveyance or mortgage." Sec. 5674 (3601) C. G. L.

"Any married woman having a right of dower in any real property may relinquish it by joining in the conveyance or mortgage of such real property, or by a separate deed executed in like manner as other conveyances." Sec. 5675 (3802) C. G. L.

"To render such sale, conveyance, mortgage or relinquishment, whether of separate estate or of dower, effectual to pass a married woman's estate or right, she must acknowledge, before some officer authorized to take acknowledgment of deeds, separately and apart from her husband, that she executed the same freely and voluntarily and without compulsion, contsraint, apprehension or fear of or from her

husband, and the officer's certificate shall set forth all the foregoing requirements."   Sec. 5676 (3803) C. G. I.

Homestead real estate is defined and the method of its alienation is stated in the Constitution.   It may be *alienated* only in the manner provided by the Constitution, which is "by deed or mortgage duly executed" by husband and wife, if that relation exists.   "Duly executed" "by husband and wife," means executed by husband and wife in the manner prescribed by law for the execution by them of conveyances or mortgages of real estate.   Homestead real estate may be abandoned as a homestead; and while a homestead it is subject to sale for taxes or assessments that may be lawfully levied against it, or for the payment of obligations contracted for the purchase of the homestead, or for the erection or repairs or improvements on the homestead real estate, or for house, field or other labor performed on the homestead; but homestead real estate may be *alienated* only "by deed or mortgage duly executed * * * by husband and wife," when that relation exists.   The Constitution does not contemplate the alienation of homestead real estate or the acquisition of an interest therein even pursuant to equitable principles which do not accord with the controlling provisions of the organic law.

An essential part of the due execution of a conveyance or mortgage of real estate by husband and wife, is that "she must acknowledge, before some officer authorized to take acknowledgment of deeds, separately and apart from her husband, that she executed the same freely and voluntarily and without compulsion, constraint, apprehension or fear of or from her husband, and the officer's certificate shall set forth all the foregoing requirements."

. The married woman must be personally present before the officer and must make to him the acknowledgment required by the statute; and the officer's certificate of her ac-

knowledgment must state that on a day named the married woman was before him and that she then made the required acknowledgment to him separate and apart from her husband. Where the authorized officer's certificate is in its contents legally sufficient, it will prevail unless duly impeached by allegations and proofs that the married woman did not in fact appear before the officer when the certified acknowledgment purports to have been taken by the officer or that there was vitiating fraud in the acknowledgment. Oates v. N. Y. Life Ins. Co., 113 Fla. 678, 152 So. 671; McEwen v. Schenck, 108 Fla. 119, 146 So. 839; Smith, Liquidator, v. McEwen, filed this term.

Here the officer's certificate appears to be legally sufficient on its face; but upon appropriate allegations and legally sufficient testimony the chancellor's decree specifically states that "the court finds that the married woman did not in fact appear before the notary public. Hence the mortgage is void. Likewise, no equitable lien can be decreed to exist upon such a mortgage or the facts that appear from the record in this case."

The mortgage is signed under seal by B. M. Wold and Myrtle Wold. It is witnessed by Robert E. Crofton and William Francke, the latter being sometimes referred to as Frank.

Crofton's testimony contained the following:

That he, his wife and Francke went together to the home of Mr. and Mrs. Wold. Crofton and Francke "went in the house, they (Mr. and Mrs. Wold) signed the mortgage and I witnessed it. Francke was with us. That's all there was to it. * * *"

CROSS

"Q. What did you say to Mrs. Wold and what did she say to you? A. I didn't say anything. Frank took the mortgage in and she signed it and that's all there is to it. * * *

"Q. Did you ask her any questions? A. I didn't ask her anything. She read the mortgage, she knew what was in it. She signed it with her own will and accord.

"Q. What did she say? A. She signed it, didn't she? Of course, I slipped up on my part of my deal. I admit it. I should have asked her personally if she signed this thing of her own free will and accord, * * *."

REDIRECT

"Q. Did Mr. Wold stay in the room the entire time you were in there? A. Yes. * * *

"Q. Did you read the acknowledgment to her? A. No.

"Q. Did you ask her whether or not she was executing it? A. I didn't ask her anything.

"Q. You took her acknowledgment? A. Yes, sir. I did. She signed the paper and we witnessed it and then I endorsed it.

"Q. And she acknowledged it to you? A. Yes, sure by her signature."

B. M. Wold testified that the note and mortgage were executed at his home, only he and his wife were present; that he went to Crofton and got the papers; asked his wife to sign them; then took them down to Crofton at his office.

"Q. Did your wife go with you? A. No, sir. No.

"Q. On the mortgage the names of Robert E. Crofton and William Francke appear as witnesses. I ask you whether or not these parties were present at the time of the signing of the note and mortgage. A. No they were not there.

"Q. Do you know whether or not you or your wife or both of you appeared before Robert E. Crofton as a notary public to acknowledge that mortgage? A. We did not.

"Q. Where did you yourself deliver the papers to Mr. Crofton? A. I took them back to the office. * * *

"Q. He (Mr. Crofton) testified in substance that he,

his wife and Mr. Francke drove you to your house and that, his wife remaining in the car, he and Mr. Francke went into your house and that the papers were there executed in the presence of himself and Mr. Francke. Please state in what respects that testimony accords with or is different from your recollection of the transaction. A. They were not out there, Mr. Francke, Mr. Crofton and his wife, as Mrs. Wold and I were the only two persons there when they were signed. * * *

CROSS

"Q. Where did you get that note and mortgage? A. I got them—Mr. Crofton handed them to me.

"Q. Where? A. Down at the office.

"Q. He never had them with him out at your house? A. No.

"Q. Did he give them to you—at what time with reference to the date of execution did he give those papers to you? A. The morning they were signed.

"Q. Isn't it possible that after you all had been out at your house and executed those papers that Mr. Francke and Mr. Crofton went home in their automobile one way, omitting to take the papers, and you took them down to him, isn't that the way it was, and not the way you just stated? A. No."

Mrs. Wold testified:

"Q. Where did you sign those two papers, Mrs. Wold? A. At the house.

"Q. Who were present at the time you signed them? A. My husband.

"Q. And yourself? A. And myself.

"Q. Was anyone else present? A. No, sir.

"Q. There appear as witnesses on this mortgage the names of Robert E. Crofton and William Francke. Were they present at the time you signed the papers? A. No, sir.

"Q. It also appears by the mortgage that Robert E. Crofton filled out the certificate of acknowledgment thereon as a notary public. I ask you whether or not you ever acknowledged to Mr. Crofton that you executed that mortgage? A. No.

"Q. Did you ever appear in his presence for the purpose of making such an acknowledgment? A. No.

"Q. Did you appear in his presence in connection with the execution of this mortgage in any way? A. Not—no.

"Q. When did you last see these papers? A. When they were signed.

"Q. What did you do with them after they were signed, or what was done with them in your presence? A. My husband took them.

"Q. He left the house with them, did he? A. Yes.

"Q. Did you accompany him? A. No.

"Q. Who first showed those papers to you—the note and mortgage? A. My husband gave them to me.

"Q. Did he ask you to do anything with respect to them? A. To sign it."

William Francke testified:

"Crofton had agreed to get this mortgage. * * * He told me that he had the papers and to witness the signature.

"Q. Where did that take place? A. At my office.

"Q. Did you sign it as a witness at that time? A. I did.

"Q. Did Mr. Crofton sign at that time or did he sign them before that? A. Well, I guess after—he must have signed first but handed it to me and said just witness the signature.

"Q. Do you remember whether or not Mr. and Mrs. Wold were present at the time that was done? A. No, they were not present.

"Q. Was either of them present? A. No, neither one.

"Q. Now, do you remember Mr. Crofton's filling out the certificate of acknowledgment on the back of that instrument? A. Yes, he did it right in the office.

"Q. At the same time he witnessed it? A. At the same time he witnessed it.

"Q. Mr. Francke, Mr. Crofton has testified in some depositions taken in this cause that he and his wife and you drove out to the Wold house; that his wife remained in the car and that you and he went into the house and that the papers were signed at that time by Mr. and Mrs. Wold and witnessed by you and him at the Wold home. Please state whether or not that accords with your recollection. A. No, I don't remember anything of that sort because I never knew his wife and don't think I ever saw her besides go riding in the car with her—absolutely not—never.

"Q. I understand then that you testify that you did not accompany Mr. Crofton to the house of the Wolds? A. Yes sir.

"Q. Did you see Mr. and Mrs. Wold sign that instrument? A. No, sir.

"Q. Your testimony is that Mr. Crofton asked you to sign as a witness in your office and you signed it? A. That's all. I considered he had done his duty and I signed as a witness."

The testimony sustains the finding "that the married woman did not in fact appear before the notary public." Even if the testimony of the notary public as to what occurred in taking the purported acknowledgment of the married woman would not defeat the certificate if the married woman had in fact appeared before the notary public to make the acknowledgment; yet as the finding of the Chancellor that the married woman did not in fact appear before the notary public is clearly sustained by the testimony, it is legally established that the constitutional

method of executing the mortgage was not observed and that the notary was without authority to make the certificate; and the mortgage is inoperative as an alienation of, or as a lien upon, the homestead real estate. Neither the recording of the mortgage, nor the payment of interest on the morgtage debt, nor the assertion of an equitable lien or a right to subrogation or otherwise can operate to acquire an interest in the homestead real estate not provided for or contemplated by the Constitution which regulates the alienation and liabilities of homestead real estate.

Affirmed.

BROWN and BUFORD, J. J., concur.

DAVIS, C. J., and TERRELL, J., concur in the opinion and judgment.