H. E. PRITCHETT, *et al.,* v. BREVARD NAVAL STORES COMPANY, *et al.*

170 So. 610.
Opinion Filed November 13, 1936.

*Claude L. Gray* and *George W. Johnson,* for Appellants; *W. C. Brooker* and *Bryant & Trantham,* for Appellees.

WHITFIELD, C. J.—It appears that Mrs. Effie F. Pritchett, a married woman, owned, as her separate property, described real estate, and that on March 8, 1928, she signed a deed conveying the property for a consideration of "ten dollars and other good and valuable considerations," to Brevard Naval Stores, Inc., a corporation. The deed of conveyance was also signed by H. E. Pritchett, the husband, the witnesses thereto being "Mrs. J. M. Edwards" and

"Golie Moore." The certificate of acknowledgment of the execution of the deed of conveyance is as follows:

"State of Florida, ⎱ SS.
"County of Polk. ⎰

"I HEREBY CERTIFY, That on this 8th day of March, A. D. 1928, before me, the undersigned authority, personally appeared H. E. Pritchett and Effie F. Pritchett, his wife, to me well known and known to me to be the individuals described in, and who executed, the foregoing conveyance to Brevard Naval Stores, Inc., and severally acknowledged the execution thereof to be their free act and deed for the uses and purposes therein mentioned; and the said Effie F. Pritchett, the wife of the said H. E. Pritchett, on a separate and private examination taken and made by and before me, and separately and apart from her said husband, did acknowledge that she made herself a party to the said deed of conveyance for the purpose of renouncing, relinquishing and conveying all her right, title and interest, whether of dower or of separate property, statutory or equitable, in and to the lands therein described, and that she executed said deed freely and voluntarily and without any constraint, fear, apprehension or compulsion of or from her said husband.

"(NOTARIAL SEAL).

"WITNESS my signature and official seal at Lakeland in the County of Polk and State of Florida the day and year last aforesaid

"(Signed) GOLIE MOORE (Seal).

"Notary Public, State of Florida at Large.

"My Commission expires May 17, 1931."

In the decree rendered herein is the following:

"It appears that at the time of the conveyance of said property by Mrs. Pritchett to the Brevard Naval Stores

Company, she was the owner of 23 of the 25 shares of stock of said corporation, the other two shares belonging to her husband and son, respectively, and that all of said stock was purchased and paid for with money belonging to her. It further appears that the said Brevard Naval Stores Company was at the time of the said conveyance indebted to the respondent in this cause, to-wit: The Gulf Fertilizer Company, which debt was subsequently evidenced by two judgments rendered in the Circuit Court of Polk County on the 12th day of November, 1930, in the sums respectively as follows: $2,870.00 damages and $21.20 costs; and $11,-050.00 damages and $20.45 costs, and which judgments are the basis of the claim of the said Gulf Fertilizer Company in this suit. It appears from the record without dispute that none of the indebtedness included in said judgments was incurred by Brevard Naval Stores Company after the conveyance of said property, except probably the costs and expenses of reducing the debt to judgment. It further appears from the record that the said Brevard Naval Stores Company, prior to the entry of said judgments in favor of the Gulf Fertilizer Company, conveyed said property to another corporation, and that thereafter, upon obtaining its judgment, The Gulf Fertilizer Company brought a creditor's bill against the said corporation and Brevard Naval Stores Company to set aside said conveyance as a fraud on creditors, and that subsequently the said The Gulf Fertilizer Company prevailed in said suit and said conveyance was set aside as fraudulent, and that thereafter execution was levied on said property as the property of Brevard Naval Stores Company, a corporation, and said property was advertised for sale, whereupon the record discloses that this suit for injunction and other relief was filed and a temporary injunction was issued in this cause enjoining the

said sale, pending the outcome of this litigation. This suit was filed by the complainants as heirs of the aforesaid Effie Pritchett, claiming that they are the owners of the above described property, as heirs of the said Effie Pritchett, and setting out that the said property was the property of the said Effie Pritchett at her death because the said deed of conveyance executed by her to the said Brevard Naval Stores Company, and heretofore referred to, was void and is void, for two reasons. First, because at the time the said deed was signed and purportedly executed by the said Mrs. Effie Pritchett, she was mentally incompetent to execute a deed of conveyance, and second, that even if she had mental capacity to execute the deed, the deed was void because it conveyed her separate statutory property and that she did not acknowledge the execution of said deed before a notary public and never appeared before a notary public for the purpose of acknowledging the execution of said deed.

"With reference to the first question of lack of mental capacity, the Court is of the opinion and finds that the evidence does not establish that Mrs. Effie Pritchett was mentally incapacitated to execute the deed in question when she executed same."

"The second proposition on which complainants base their claim that the deed is void, is that Mrs. Pritchett never appeared before a notary public and acknowledged the execution of said deed."

"Mr. Pritchett, one of the complainants and the husband of the deceased, Mrs. Pritchett, testified that Mrs. Pritchett was in bed ill and that he had her sign the deed in her bedroom and took it to the office of the notary public down town and had the notary acknowledge it in the office of the notary, and that the notary took the acknowledgment in her

office and that Mrs. Pritchett never appeared before or in the presence of the notary. * * * The evidence does, * * * establish clearly and beyond question, I think, that Mrs. Pritchett was ill during all this period of time, to-wit: on the date the deed shows to have been executed and for a considerable period of time prior thereto, and from said date thereafter until the date of her death, and that she could not have left her home and gone any place for the purpose of appearing before a notary public, or for any other purpose, unless she had gone in an ambulance. The record does not show that she could not have gone to the office of a notary public or before a notary public some place in an ambulance, but I think the record probably indicates that she did not leave the house and that if she appeared before any notary public in connection with the execution of said deed, it must have been in her home. This evidence about her condition is by reputable physicians and a nurse, and there is no reason not to accept same as true. * * * Mrs. Edwards testified that she witnessed the deed and that Mrs. Pritchett signed it, and that at the time Mrs. Pritchett signed it, and at the time she witnessed it, Miss Moore, the notary, was not there, and that she did not know Mrs. Moore."

"In connection with the other testimony in the case, it is quite probable that *the testimony of the notary public, if legally competent* evidence, together with the testimony of the complainant, H. E. Pritchett, and of the other witnesses, particularly the doctors and the nurse, would be sufficient to show that Mrs. Pritchett never appeared personally before the notary public to acknowledge the execution of the deed in question. However, said testimony was objected to properly by the respondent. The Gulf Fertilizer Company, when the said witness was placed on the stand and asked

to give said testimony, and was thereafter properly objected to as it came along, and a motion was made to strike all said testimony, and all said objections have been properly insisted on at the time of the bringing on of this cause for final hearing. The question here involved is simply a question of whether or not the testimony of the notary public, who made the certificate of acknowledgment, is competent evidence to be considered in this cause, or whether it is not. If the testimony of the said witness is competent evidence in this cause, then it is quite probable that the testimony as a whole, including her testimony, would be sufficient, under the law, to establish as a fact that Mrs. Pritchett never appeared before said notary public, personally or otherwise, and that the certificate to that effect by the notary is, therefore erroneous. On the other hand, if this testimony is not competent evidence, then it is quite clear to my mind that the testimony of the complainant is wholly insufficient to show that Mrs. Pritchett did not appear before said notary."

Depositions of the Notary Public, Miss Golie Moore, now Mrs. Golie Wark, contain the following:

Over appropriate objections for the defendant, Mrs. Wark testified:

"Q. You don't recall who presented this deed to you?

"A. No. It is probable Mr. Pritchett did. I don't remember anything distinctly about it.

"Q. Do you recall whether or not you went out to Mr. Pritchett's house to take this acknowledgment at the time of March 8, 1929?

"A. I know that I did not, because had I gone I would have distinctly remembered it.

"Q. You recall definitely, though, you did not go to his house?

"A. I have never been in Mr. Pritchett's house.

"Q. Do you have any recollection of the facts and circumstances surrounding the execution of this deed and the appending of your certificate?

"A. Not of that deed particularly, although I have, just in the office, handled the description and all because of Mr. Pritchett's case when he got the property back from Silverberg and Mills in Chicago. It was turned back under a contract, and at the time Mr. Pritchett sold the property to Silverberg why he and Mrs. Pritchett were in the office and I wrote the contract.

"Q. Mrs. Wark, would you say that Mrs. Pritchett was or was not before you, at the time this certificate of acknowledgment which you have appended to the instrument was executed?

"A. If she was sick in bed as they say she was, she evidently did not appear before me.

"Q. Are you in a position to testify at this time, Mrs. Wark, definitely, whether Mrs. Pritchett did appear before you at the time you took this acknowledgment?

"A. I couldn't say.

"Q. Do you have any definite recollection of Mrs. Pritchett ever having appeared before you and acknowledged the execution of this deed?

"A. No recollection of her acknowledging that deed in particular.

"Q. You stated a while ago, Mrs. Wark, that Mrs. Pritchett was in your office at one time with Mr. Pritchett. That time that you refer to was on a previous occasion?

"A. Yes.

"Q. Do you recall whether she was ever in the office where you were employed at any time after that?

"A. I don't recall it.

"Q. Would you say that she was or was not in the office after the time that you testified that you drew up a contract?

"A. I have no distinct recollection of her ever having been in the office except that one time. I remember that because I did without my dinner.

"Q. Do you recall, when this deed was presented for acknowledgment, whether or not the signature of Mrs. Edwards was on it as a subscribing witness?

"A. I hesitate to say.

"Q. You don't recall?

"A. It probably was. Mr. Pritchett probably brought the deed into the office for me to take the acknowledgment and sign my name as a witness because I already knew Mrs. Pritchett's signature. I certainly wouldn't take an acknowledgment when it wasn't on there.

"Q. When it was what?

"A. When it wasn't on there.

"Q. You are sure then that Mrs. Pritchett had signed her signature on there?

"A. I am sure it was on there.

"Q. You are not sure, though, as to whether or not she appeared before you?

"A. I am not sure of that.

"Q. Was Mr. Pritchett a client of the office?

"A. He was.

"Q. As a matter of fact, Mrs. Wark, didn't Mr. Pritchett bring this deed into your office and ask you to append your certificate of acknowledgment to it?

"A. In all likelihood he did.

"Q. Had you been in the habit of taking acknowledgments when deeds were presented for acknowledgment

where you recognized the signatures without the parties actually appearing before you?

"A. Not promiscuously, but Mr. Pritchett was a client of ours, and I knew Mrs. Pritchett's signature, and it wasn't the homestead, and I had just handled the property, and I knew the description.

"Q. You know Mrs. Pritchett personally?

"A. Yes, sir.

\* \* \*

"Q. Then did you not go out to Mr. Pritchett's house on March 8, 1928, and take this acknowledgment or make a separate and private examination of Mrs. Pritchett?

"A. I did not.

"Q. You are positive that you did not take this acknowledgment at Mr. Pritchett's house?

"A. I am positive.

"Q. Since you have previously testified, Mrs. Wark, have you refreshed your memory and do you now have any independent recollection to make which you can refer to, as to taking or rather the appending of your certificate of acknowledgment on this deed?

"A. I know that I did not go into Mr. Pritchett's house, and I know I have never made a notary's certificate without the—what is the word I call it?—the people who make the deed—the acknowledging party—having already signed.

"Q. You mean by that if they—

"A. That they had already signed it when I took the acknowledgment.

"Q. That if they had signed it, you appended your acknowledgment to it?

"A. After they had signed it; and there were always witnesses on there when I made my certificate.

"Q. In other words, Mrs. Pritchett's signature had to be on here at the time?

"A. And the other witness.

"Q. Please explain what you mean by your statement.

"A. I have never made a notary's certificate to any legal instrument except where the parties had already signed, and I was always the last witness to sign.

"Q. Just what do you mean by that?

"A. In other words, there were two witnesses required and I never put my signature on and then left it for an additional signature of a witness.

"Q. What about the requirement of a personal appearance before you on a separate and private examination?

"A. Well, I never took an acknowledgment unless they were really before me, except where I knew the people. Mr. Pritchett was our client, and I knew Mrs. Pritchett's signature, and it wasn't the homestead property, and there was a witness already.

"Q. You mean to say those are the circumstances under which you appended your acknowledgment and subscribed to this deed?

"A. Yes, sir.

"Q. What about the requirement of a personal appearance before you on a separate and private examination?

"A. The question is relative to my taking the acknowledgment?

"The question was read.

"A. Well, I never took an acknowledgment unless they were really before me except where I knew the people. Mr. Pritchett was our client and I knew Mrs. Pritchett's signature, and it wasn't the homestead property, and there was a witness already.

"Q. You mean to say those are the circumstances under which you appended your acknowledgment and subscribed to this deed?

"A. Yes, sir."

The testimony of the notary was excluded from consideration.

The bill of complaint brought by the heirs of Mrs. Effie F. Pritchett seeks a cancellation of the deed of March 8, 1928, and other relief. The court dismissed the bill of complaint, and plaintiff appealed.

The essential question for decision is whether the court erred in excluding testimony of the notary public as to the facts of the acknowledgment transaction.

The Constitution provides that:

"All property, real and personal, of a wife owned by her before marriage, or lawfully acquired afterward by gift, devise, bequest, descent, or purchase, shall be her separate property, and the same shall not be liable for the debts of her husband without her consent given by. some instrument in writing executed according to the law respecting conveyance by married women." Sec. 1, Art. XI.

The statutes of the State contain the following:

Conveyances of real estate shall be "by deed, in writing, signed, sealed and delivered in the presence of at least two subscribing witnesses." Sec. 5660 (3787) C. G. L.

"Any married woman owning real property may sell, convey or mortgage it as she might do if she were not married, provided her husband join in such sale, conveyance or mortgage." Sec. 5674 (3801) C. G. L.

"To render such sale, conveyance, mortgage or relinquishment, whether of separate estate or of dower, effectual to pass a married woman's estate or right, she must acknowledge, before some officer authorized to take acknowl-

edgment of deeds, separately and apart from her husband, that she executed the same freely and voluntarily and without compulsion, constraint, apprehension or fear of or from her husband, and the officer's certificate shall set forth all the foregoing requirements." Sec. 5676 (3803) C. G. L. See N. Y. Life Ins. Co. v. Oates, 122 Fla. 540, 166 So. 269.

"At common law a married woman could not, either alone or by uniting with her husband in a deed, bar herself, or her heirs, of her interest in real estate. Such a deed and her contracts generally were void, except so far as they related to her equitable separate estate and permitted by its nature and holding. The only way she could convey real estate was by uniting with her husband in the solemn proceeding in a court of record known as a fine and recovery. This mode of conveying real estate by married women is abolished in this State, but by the Constitution and statute they can mortgage or 'convey' their interests in realty, and the mode thereby provided is said to be a substitute for the fine and recovery of the common law. (See Blood v. Hunt, 97 Fla. 551, 121 So. 886; Hitz v. Jenks, 123 U. S. 297, text 305, 8 Sup. Ct. 143, 31 L. Ed. 156.)

"A deed of conveyance signed, sealed and delivered by a man and the execution properly attested may be 'duly executed' and effectual as between the parties to pass his interest in real estate other than his homestead when he is a married man, whether the execution is acknowledged or proven before an officer or not. But under the statute to render a conveyance effectual to pass a married woman's estate or right in real estate, she must acknowledge, before some officer authorized to take acknowledgments of deeds, separately and apart from her husband, that she executed the same freely and voluntarily and without compulsion, constraint, apprehension or fear of or from her husband,

and the officer's certificate shall set forth all the foregoing requirements." Shad v. Smith, 74 Fla. 324, 76 So. 897.

While the officer who takes an acknowledgment will not as a witness be permitted to contradict the verity of his official certificate, made under the statute, of the acknowledgment by a married woman of the execution by her of a conveyance or mortgage of real estate. Herald v. Hardin,. 95 Fla. 889, 116 So. 863, such officer may testify as to the facts and circumstances of the acknowledgment transaction, the credibility and weight of such testimony to be determined by the court in adjudging the legal effect of the official certificate of acknowledgment as made. This rule has in substantial effect been observed in the decisions of this Court.

In Shear v. Robinson, 18 Fla. 379, the notary testified there was no acknowledgment by the wife separate and apart from her husband, though both husband and wife signed the conveyance; but there was evidence to the contrary and the certificate of the notary was sustained. See also Bank of Jennings v. Jennings, 71 Fla. 145, 71 So. 31; Rausch v. Eqt. L. Assur. Soc. of U. S., 77 Fla. 846, 82 So. 295; McEwen v. Schenck, 108 Fla. 119, 146 So. 839; Randall v. Twitchell, 98 Fla. 559, 124 So. 21; Hitz v. Jenks, 123 U. S. 297, 305, 8 Sup. Ct. 143, 31 L. Ed. 156; Johnston v. Wallace, 53 Miss. 331; Ann. Cas. 1917A p. 372; Meyer v. Gossett, 38 Ark. 377.

In Shad v. Smith, 74 Fla. 324, 76 So. 897, the notary testified that there was no acknowledgment of the execution of the deed by wife separate and apart from her husband, and on the whole evidence the certificate of the notary was held invalid. See also Suttle v. Wold, 117 Fla. 802, 158 So. 447; 1 Cyc. 619, 622, 626; Wheelock v. Cavitt, 91 Tex. 679, 45 S. W. 796; Michener v. Cavender, 38 Pa. St. 334;

Grider v. Am. Freehold Land Mortg. Co., 99 Ala. 281, 12 So. 775; Le Mesnager v. Hamilton, 101 Cal. 532, 35 Pac. 1054; 1 C. J. 895-899.

In Hutchinson v. Stone, 79 Fla. 157, 84 So. 151, 155, the notary testified that she took the acknowledgment of the married woman over the telephone, they being in different parts of the city. The certificate was ineffectual. See also Robinson v. Bruner, 94 Fla. 797, 114 So. 556; 1 Am. Jr. 379; Corpus Juris Secundum 884-905; 58 A. L. R. 604; 12 A. L. R. 538.

In Holland v. Evans, 113 Fla. 839, 152 So. 627, the notary testified, but it was held that the certificate was ineffectual because the testimony showed the married woman did not appear before the notary as stated in the certificate of the notary. See also McEwen v. Schenck, 108 Fla. 119, 146 So. 839; 4 L. R. A. (N. S.) 1180.

It is not necessary to cite other cases.

The testimony of the notary public that was excluded did not contradict the verity of the official certificate of acknowledgment, but regarded it as an authorized official act. Such testimony tended to show the facts of the acknowledgment transaction, and should have been considered, the credibility and weight of the testimony being for the court to determine in adjudging the legal effect of the official certificate under an issue referred to in the decree. As the court did not consider the notary's testimony in adjudicating the merits of the controversy to which the testimony related, viz.: whether the married woman acknowledged before the notary the execution of the deed, the decree should be reversed and the cause remanded for appropriate proceedings.

It is so ordered.

TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.

ELLIS, P. J., concurs specially.

ELLIS, P. J. (concurring specially).—I think that the decree of the Chancellor should be reversed for the error committed in excluding the testimony of the Notary Public who made the certificate of acknowledgment to the Pritchett deed as to the facts and circumstances under which the acknowledgment was taken. That testimony was competent under the decisions of this Court, cited in the opinion, upon an inquiry as to the jurisdictional fact of the presence of Mrs. Pritchett before the Notary at the time of the alleged acknowledgment of the execution of the deed.

The record fully discloses that Mrs. Pritchett was not present when the acknowledgment was alleged to have been taken and consequently Section 5676 C. G. L. 1927 was not complied with by the Notary Public when the alleged acknowledgment was taken, and as the property purported to be conveyed was the separate property of Mrs. Pritchett the purported conveyance was ineffectual to convey her interest to the Brevard Naval Stores Company against which the Gulf Fertilizer Company obtained its judgments which it seeks to enforce by sale under execution.