**VIRGINIA T. BECKHAM v. R. L. CLINE and J. D. GRIFFIN**

10 So. (2nd) 419                                   Division A
September 29, 1942       Rehearing Denied November 30, 1942

482

Smith & Petteway, for appellant.

Thomas W. Bryant, E. Snow Martin and Mabry, Reaves, Carlton & White, for appellees.

BUFORD, J.:

Appeal brings for review judgment on demurrer sustained to amended declaration.

The pertinent facts alleged in the amended declaration in effect are: that the defendants on the 29th day of January, 1941, were practicing physicians in Lakeland, Polk County, Florida; that on the 30th day of January, 1941, petition was filed in and office of and before the County Judge of Polk County. by five persons alleging that plaintiff Virginia T. Beckham was personally known to each of such persons and that to the knowledge of such persons the mental condition of said Beckham was sufficient to justify the belief that said Beckham was then insane.

It is further alleged that pursuant to the allegations and prayer of said petition the County Judge on said date by his order appointed R. L. Cline and J. D. Griffin, practicing physicians, and Elberta Marshall as an examining committee to examine the said Beckham to determine whether or not she was insane in the manner prescribed by law and to make report to the said court.

It is further alleged:

"That it thereupon became and was the duty of said defendants, within a reasonable time after notice of their said appointment, to secure the presence of the plaintiff before them and to actually and personally see and examine the plaintiff as to her mental and physical condition at the time of such examination. That the said defendants, through negligence or malice and in wanton disregard of their duty afore-

said, did not secure the presence of the plaintiff before them and did not actually or personally see and examine the plaintiff as to her mental or physical condition; neither did the defendants make any attempt or effort whatever to examine the plaintiff. That notwithstanding their negligent or malicious failure to perform their duty toward the plaintiff as aforesaid, the said defendants, together with the said Elberta Marshall, constituting said examining committee, appointed as aforesaid, did on the 30th day of January, 1941, sign and make a report to the County Judge of said County wherein and whereby they reported to said Judge that they had personally seen and examined the plaintiff and found that she was insane and that she required confinement and mechanical restraint to prevent self-injury or violence to others, a true copy of said report being hereto attached and made a part hereof. That the plaintiff was not insane at the time said report was signed and made as aforesaid nor at any other time nor was she laboring under any hallucination, neither did she require confinement and mechanical restraint to prevent self-injury or violence to others, all of which the defendants could and would have discovered and learned had they personally seen and examined the plaintiff, as it was their duty to do. That as the direct and proximate result of negligence or maliciousness of the defendants in failing to make any examination of the plaintiff, as aforesaid, the County Judge aforesaid did, on the 30th day of January, 1941, without knowledge of the failure of the defendants to perform their duty as aforesaid, enter a decree, based upon said report, adjudging the plaintiff to be insane and that she be committed to the Florida State Hos-

pital, and directing the Sheriff of said county to forthwith deliver the plaintiff to the superintendent of the Florida State Hospital, a true copy of said Decree being hereto attached and made a part hereof; and pursuant to said Decree, and as the direct and proximate result of the negligence or maliciousness of the defendants as aforesaid, the plaintiff was, at about 8 o'clock A.M. on the 31st day of January, 1941, without any knowledge of said insanity proceedings against her and without any opportunity to communicate with any friend or relative or legal counsel, forcibly and without her consent taken into custody by the Sheriff of Polk County, hand-cuffed, and transported on said date by said Sheriff to the Florida State Hospital at Chattahoochee, Florida, and there delivered by said Sheriff to the superintendent of said hospital for confinement, and the plaintiff was then and there unlawfully restrained of her liberty and confined in said hospital against her will and consent until the 15th of April, 1941. That on the 24th day of May, 1941, pursuant to a petition filed on behalf of the plaintiff, the County Judge of Polk County entered an Order adjudging that the decree finding the plaintiff insane and ordering her committed to the Florida State Hospital was entered without jurisdiction and vacating and setting aside said Decree of insanity as wholly null and void ab initio, a copy of said Decree being hereto attached as a part hereof."

Then follow allegations of the result and damage flowing from such alleged wrongful act.

There is no difference between the legal effect of the allegations of the First and Second Counts of the Declaration.

Demurrer was interposed as to each County of the Declaration and, amongst other grounds, the following appears:

"3. It affirmatively appears from said Count that the findings and report of the defendants therein complained of, made as members of a committee appointed to inquire into plaintiff's sanity, were made in a judicial proceeding and were pertinent thereto and are therefore absolutely privileged."

"5. Said Count affirmatively shows that the defendants were quasi judicial officers, and that what they did was in the scope of their duties as such, and are therefore immune from suit."

Appellant states the question involved here for our determination as follows:

"Where the members of an examining committee appointed to examine an alleged insane person and report to the County Judge the result of such examination negligently or maliciously failed to secure the presence of the supposed insane person and did not actually or personally see and examine such person as to her mental or physical condition nor even attempt so to do, but reported to the County Judge that they had personally seen and examined such person and found her insane and requiring mechanical restraint, and the County Judge, relying on such report, without knowledge of the committee's failure to make or attempt to make any examination, entered an order decreeing such person insane and committing her to the Florida State Hospital, where she was confined against her will and consent, when, as a matter of fact, such person was not insane and did not require mechanical restraint, which fact the members of such committee would have discovered and learned had

they personally seen and examined her as it was their duty to do, will an action for damages by such person lie against the members of such committee?"

This case is differentiated from that of Fisher v. Payne, 93 Fla. 1085, 113 So. 378, for several reasons. In the Fisher case it was not alleged that the defendants made no examination of the plaintiff. Neither is it alleged that at the time of the inquiry and commitment of Mrs. Fisher that she was sane. In this case the declaration alleges that at the time of her commitment the plaintiff was sane and it alleges that if the defendant physicians constituting members of the committee appointed had seen and examined her they would have found that she was sane. The appointment by the County Judge under which the defendants are alleged to have acted, directed the defendants, together with Elberta Marshall "as an examining committee to examine said Virginia Beckham to determine whether or not she is insane in the manner prescribed by the law and to report to this court." The committee, therefore, was without any authority to make any report to the court without first having examined Virginia Beckham to determine whether or not she was insane.

The law, as it stood at the time of the proceedings here involved (Sec. 2309 and Sec. 2311 R.G.S., 3655 and 3657 C.G.L.) conferred quasi judicial powers upon the physicians who were appointed on the examining committee in such cases. When such appointments had been made the liberty of the person whom the committee had been appointed to examine was in their hands. Before they were authorized to make any report, or in other words, to have jurisdiction to make any report to the court concerning the mental condition of the person

under consideration they were required both by the statute and the terms of the order authorizing them to report, to see and examine that person. If they failed to see and examine the person named in the appointment they were without any authority to make report of their findings and if they so acted they necessarily made such report at their peril. If such person was committed to the asylum for the insane because of such unauthorized report when and if in fact such person is not insane, then such person has a cause of action against such physicians for false imprisonment. This is true not because of any error in judgment or misstatement of findings, but because the physicians by certifying that they have made an examination, which they have not made, have thereby caused the plaintiff to be restrained of her liberty without due process of law, when had an examination been made, she would (as is alleged) have been found by the said physicians of the committee to have been sane. This is true because the statutes, supra, provide that after the examination and report the person so examined (being thereby given notice of the proceedings) is afforded the opportunity of appearing before the court and contesting the reported findings of the committee. Without the examination such person is deprived of this opportunity to be heard and is committed without opportunity to be heard. Of course, if she was insane then she has suffered no damage by the wrongful act and cannot recover. She must prove the material allegations of the declaration. Immunity does not apply to protect a judicial officer in a case where such officer causes the arrest and detention of a person in a proceeding in which he is acting without jurisdiction. 22 Am. Jurisprudence, 392, Sec. 56 et

seq; 13 A.L.R., Annotation 1356 et seq; 55 A.L.R. 283. The same rule applies to quasi judicial officers. 22 Am. jurisprudence 397, Sec. 62 and cases there cited.

In 48 C.J. 1133, Sec. 128, it is said:

"A physician may be held liable for falsely certifying the insanity of a person; but without statutory provisions to that effect, a civil action for damages against a physician for certifying to a person's insanity cannot be based on the insufficiency of the methods which he pursued in reaching and certifying a correct conclusion. In an action for falsely certifying through malice or negligence, to the insanity of plaintiff, the falsehood, and not the insufficiency of the certificate, is the ground of action against defendant. A physician who signs a certificate of insanity which is false without exercising ordinary care and prudence in making his examination, and without making due inquiry into the question of sanity, is liable to an action for damages. Nor is he less liable for the want of such due care and inquiry because he has acted *bona fide*. But a physician who signs a certificate of insanity when the patient is sane is not liable therefor where the certificate was signed after making an examination, and the mistake was due merely to an error of judgment, provided the physician brings to the case the learning, care and diligence required by law. In such an action the burden is on plaintiff to show negligence, and also to show that at the time the certificate of insanity was given he was in fact sane. Defendant may show under what circumstances and on what information he acted in making such certificate. If such evidence does not go to the extent of a jurisdiction in case the

certificate is found to be false, it is proper evidence to be considered in awarding damages."

In the case of Hall v. Semple, 176 Eng. Rep., Full Reprint of Foster and Finlason, Vols. 3 and 4, page 151, the Court of Queens Bench in 1862, the headnote is as follows:

"(A medical man, who has merely signed a certificate under the Lunacy Acts and has done nothing more towards causing the confinement of the alleged lunatic, is not liable in trespass (though *quaere,* as to the effect of any subsequent efforts on his part to prevent the party's discharge). Nor, if he has merely consulted another medical man who has signed the other certificate, and told him his own idea of the case, is he liable for causing the doctor to sign such certificate. But if he signs such a certificate without taking due care and making due inquiries, he is liable for the consequences which ensue. And if on his own personal examination he is not satisfied, he is bound to make due inquiries. Nor is he the less liable for the want of such due care and inquiries because he has acted *bona fide.*"

The enunciation of the presiding judge in that case contained the following:

"It appears to me that in a case of this kind malice is not necessary to give the right of action. I will tell you why I think so. In an action for a malicious prosecution it is so from the peculiar nature of that action and, therefore, no matter how maliciously the thing was done, the action does not lie if there was any reasonable cause. But that is not the kind of complaint which is made here. The true ground of his complaint is the negligence of the defendant and the want of due care in the discharge of the duty

thrown upon him; and I think that if a person assumes the duty of a medical man under this statute and signs a certificate of insanity which is untrue, without making the proper examination or inquiries which the circumstances of the case would require from a medical man using proper care and skill in such a matter—if he states that which is untrue, and damage ensues to the party thereby, he is liable to an action, and it is to that I desire to direct your particular attention. Take me, then, as telling you, in point of law, that if a medical man assumes under this statute the duty of signing such a certificate, without making, and by reason of his not making, a due and proper examination, and such inquiries as are necessary, and which a medical man under such circumstances ought to make and is called on to make, not in the exercise of the extremest possible care, but in the exercise of ordinary care, so that he is guilty of culpable negligence, and damage ensue; then, that an action will lie, although there has been no spiteful or improper motive, and though the certificate is not false to his knowledge."

In Bacon, et al., v. Bacon, 76 Miss. 458, 24 So. 968, it was held

"2. The rules of an asylum required a certificate of two physicians that they had examined the alleged insane person, as a condition to her admission. One of the certifying physicians observed the patient in a casual way, and saw her gazing with a vacant stare out of a store into the street; the other had noticed her sad and silent, and inattentive to her surroundings, and once saw her sitting with her hands folded on her lap, facing the wall, and refusing to be drawn

into conversation. *Held,* that this did not constitute the examination required."

"3. In an action against physicians for falsely certifying to plaintiff's insanity, it was competent, as showing their good faith, to prove conversations between the physicians and others, in which the supposed condition of lunacy was disclosed to them, preparatory to their making their certificate."

In the text of that case, page 969, we find:

"In the case before us both physicians did certify, in the paper made by them, and which was required by the superintendent and trustees of the asylum to be made as an indispensable condition precedent to the commitment of the plaintiff, that they had examined her and found her to be insane, and a fit subject for treatment in the asylum; when in truth, as both physicians frankly testify on trial, they, nor either of them, had examined her as to her sanity or insanity. They are bound to have seen and known, from the blank form certificate sent them by the superintendent for their use in this case, that before the plaintiff would be received into the asylum they must certify that they had examined her and found her insane, and a fit subject for treatment in the asylum. They are chargeable too with knowledge of our statute on this subject which declares that 'the board of trustees shall prescribe suitable regulations as to the history of each case admitted without adjudication, and may compel conformity to such rules by refusing the application.' Code 1892 No. 2844. And yet, with knowledge of this statute, and of the construction placed upon it by the trustees, as clearly shown by the form of certificate sent them for use in this case, they certified, as required by the rules and

regulations adopted by the asylum authorities, that they had examined the plaintiff, when in truth they had not examined her. It is true that both physicians had observed the plaintiff in a casual way, and not professionally. One of the physicians had observed the plaintiff on a single occasion, when she was for a few moments awaiting the services of an attendant in a shoe store. He saw her with a vacant stare gazing out into the street. The other physician had other and greater opportunities for observation, with the result of noticing her sad and silent, and inattentive to what was transpiring around her, and, on one occasion sitting with her hands folded in her lap, facing the wall of the hallway and refusing to be drawn into any conversation, or to reply at all to a remark made to her. But this was not the examination required to be made as a condition precedent to a commitment to the asylum."

Judgment in that case was for the plaintiff. In closing the opinion, the Court said:

"The jury has found that the plaintiff was not insane, and was not the victim of that most horrible mania alleged against her in the certificate on which she was committed to the asylum and we cannot say the jury was clearly wrong. The amount of the verdict, even as compensatory damages, cannot be said to shock reason or conscience. A sad, silent and fragile little lady, now beyond middle life, wrongfully declared a lunatic, and that of the most repulsive style, shut up in a mad house, under the circumstances disclosed, and with a stigma branded upon her name and character which verdicts of juries and judgments of courts may never wholly efface, and with endurance of such shame, humiliation and crucifixion of

soul as happily does not often fall to woman's lot, has appealed to the courts for redress of her wrongs, and we do not feel authorized to take from her the poor fruits of her victory. Affirmed."

The gravamen of the right of action is not that the defendants, after examination, reported a conclusion not warranted by the facts, but the right of recovery lies in the allegation that they made no examination of the plaintiff but made a false report to the court as alleged in the declaration and thereby caused her to be confined in a public insane asylum, The Florida State Hospital, when, in truth and in fact, she was not insane and when, as alleged in the declaration, if the defendant physicians had made any examination of her, they would have found that she was not insane.

As hereinbefore stated, the allegations of the declaration are sufficient to show that the report was made by the physicians under an order of the court which required them, before they were authorized to make any report, to examine Virginia Beckham and from such examination to determine whether or not she was insane.

The same rules of law as to jurisdiction, which we have applied to acknowledgments of written instruments, are applicable here. The acknowledgment of a married woman in executing a deed must be "before" the officer purporting to take the same. Carn v. Haisley, 22 Fla. 317; Hutchinson v. Stone, 79 Fla. 157, 84 So. 151; Robinson v. Bruner, 94 Fla. 797, 114 So. 556. Appearance of wife who makes acknowledgment before proper officer is essential to jurisdiction of officer to make certificate. See Oates v. New York Life Ins. Co., 113 Fla. 678, 152 So. 671; Pritchett v. New York Life Ins. Co., 125 Fla. 653, 170 So. 700;

Suttle v. Wold, 117 Fla. 802, 158 So. 447; McEwen v. Schenck, 108 Fla. 119, 146 So. 839; Mills v. Hamilton, 121 Fla. 435, 163 So. 857.

The allegation of the declaration further is that the County Judge acted, as he was authorized to act, solely upon that report and issued his commitment requiring plaintiff to be confined in the insane asylum.

There is, therefore, the necessary allegation of direct casual connection between the false representation that plaintiff had been examined by the committee and plaintiff's confinement in the Florida State Hospital.

For the reasons stated, the judgment must be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

So ordered.

BROWN, C. J., WHITFIELD and ADAMS, JJ., concur.