**IN THE MATTER OF G. D. HUSS, JR.**

25 So. (2nd) 371          January Term, 1946
March 22, 1946                 Division B

*W. W. Whitehurst* and *Treadwell & Treadwell,* for appellant.

*Mabry, Reaves, Carlton, Anderson & Fields,* for appellee.

THOMAS, J.:

In the original petition of G. D. Huss, Jr., filed in the County Judge's Court of Hardee County and an amendment to it the following factual situation was presented.

The petitioner was adjudged insane in proceedings instituted 23 March 1945 under Section·394.20, Florida Statutes, 1941, and F.S.A., and upon certain irregularities in the inquest being made known to the county judge the order of commitment was set aside. Three days later a committee of entirely different personnel was appointed, and after exhaustive examination of G. D. Huss, Jr., they declared him sane. Two months passed; then Huss was arrested by a deputy sheriff, R. Bonard, on a charge of drunkenness, and was incarcerated. The same day a third petition for inquiry into the man's sanity was filed, whereupon two physicians, different from those serving on the other two committees, and the deputy sheriff, Bonard, (who had joined his associates in declaring Huss insane in the proceedings later set aside) were designated to make the examination. Huss was taken by the deputy sheriff from the jail in Wauchula to Bartow, where the doctors resided, and at the hospital there these physicians examined him "without the presence" of the deputy sheriff. The latter then returned Huss to the jail at Wauchula. Subsequently the physicians sent their report to the county judge; he delivered it to the deputy sheriff, who affixed his signature. It was the deputy's understanding, so the allegations of the petition continued, that the technical language of the statement indicated that Huss was suffering from excessive use of alcohol, but not from mental derangement, the deputy never having entertained the opinion that Huss was insane. It is only fair here to repeat that this same deputy had participated in a report, subsequently held invalid, that Huss was insane. On 16 May 1945 Huss was committed to the Florida State Hospital.

It was charged that the adjudication and consequent committment were void because the whole committee did not actually meet and did not as a group make the examination. It was contended that Huss was not and had not been insane and that he was not apprised of the result of the inquiry until about an hour before his removal from the jail for transportation to the State Hospital. In this manner, so it was asserted, he was deprived of his right to contest the report and challenge the validity of the commitment.

He sought orders returning him from Chattahoochee (so he might be present at the hearing in the instant case), vacating the commitment, releasing him from custody, and discharging his guardians.

Upon suggestion that he was disqualified, the county judge recused himself, and the circuit judge assumed jurisdiction of the controversy. The latter first entered an order that Huss be removed from Chattahoochee to Wauchula; then upon motion to rescind it and upon demurrer to the petition, both of which challenged jurisdiction of the court, he held that the facts alleged were not sufficient to give the court jurisdiction or to show the commitment void or voidable. He sustained the demurrer and dismissed the petition. From this action appeal was lodged in this court.

Our decision of two questions is urged: (1) the sufficiency of the facts, if proved, to show the commitment void, and (2) the power of the court to entertain and determine the petition.

In his attack upon the procedure of the committee appellant lays great stress on the fact alleged that the two physicians examined him "without the presence" of the layman. It is not said that this member was prevented from observing or taking part in the examination, but simply that he "was not invited by said doctors to be present." This seems not to us a fatal defect in the procedure, or even an irregularity. The statute, Section 394.21, Florida Statutes, 1941, and F.S.A., does not specify in just what manner the committee shall function, but simply requires that the committee "shall secure the presence of the supposed insane person and shall make such thorough examination as will enable them to

ascertain [the subject's] mental . . . condition . . . " Certainly Huss was present before experts and layman as well, and we shall presume all were afforded an opportunity to gain the intelligence necessary properly to discharge the duty then assumed when they accepted the commission from the court. We cannot construe the language we have quoted to require all committeemen to be in attendance at all times in order for each of them to become convinced of the person's sanity or lack of it.

From the picture of this affair as it is reflected from the petition, Huss was alone with the deputy as they traveled to and from Bartow and was alone with the physicians during his stay there. The important feature is that the report of insanity was signed by each member of the committee. We do not think that the mere fact that the deputy sheriff was absent when the physicians conducted the examination at the hospital would render the proceedings void. To pursue the matter further, we do not consider that the validity of the report was affected by the circumstances that during the trip from Wauchula to Bartow and back Huss was alone with the deputy sheriff. In all candor we say that another factor which confirms this view is the appellant's tardiness in making his attack upon this procedure. He had the right, under the statute we have cited, to contest the "charge of insanity," but so far as we are advised from the record he did not avail himself of that remedy. Not until about eight months had passed did he launch the present assault on the judgment.

The allegations by the appellant as to the deputy sheriff's construction of the physicians' report bear little weight because, as appears from the averments, he did actually sign it. We have not found in the record any copy of the report, but certainly this deputy sheriff, himself an officer of the court, must have known that the proceeding was instituted to determine the sanity or insanity of Huss. He had already acted on a similar committee where the sanity of the same person was under study. It was explained in the petition that the deputy sheriff had known for many years that Huss was addicted to the use of alcohol and because of his unfamiliarity with medical terms and his knowledge that for

some time Huss's friends and relatives were eager to have him admitted to an institution for the treatment of chronic alcoholism, he signed the report. If we take these allegations together they really mean that this deputy sheriff, appointed as one of three men to determine the lunacy of Huss, in furtherance of his duties in that capacity, signed a report which did not deal with that subject at all, but only with the matter of securing treatment for chronic alcoholism. The logic of such a deduction is extremely doubtful, even were we to indulge a presumption in favor of the pleader.

Another phase of the first question involves the validity of the adjudication and commitment, using the language of appellant's brief, "in the absence of knowledge of the supposed insane person or notice to him of the filing of the report and an opportunity to contest the same, as provided by the statute." Our examination of the law, Section 394.21, supra, has not revealed any requirement for notice to the supposed insane person. It has been indicated by this court in Beckham v. Cline et al., 151 Fla. 481, 10 So. (2nd) 419, that the examination itself is notice of the proceedings. It is stipulated in the act that the person whose mental condition is in question may at any time before the report is rendered or before the commitment is issued "have the right to apply to the court . . . by petition for permission to contest the charge of insanity." So far as we are informed, the appellant never made any attempt to exercise this right. It is shown in his present petition that he was imprisoned 7 May 1945 and that although formal representation of his insanity was made before the court on that day, appellant was not transported to Bartow for the examination until 10 May 1945. Even though he may not have known of the petition in the beginning, he must have been apprised of it on the day he was examined. Six days then expired before the filing of the report on the 16th day of that month. Evidently he had at least six days in which to ask the court to be allowed to challenge the charge of insanity. He made no such effort and, so far as we are advised, nearly eight months passed, as we have already written, before he made any attack upon the report or the commitment.

Considering the allegations of the petition separately and collectively we reach the conclusion that no error has been shown in the ruling of the lower court sustaining the demurrer. Having this view, we are of the opinion that it is not necessary for us to discuss or decide the second question. The proceeding not having become void, Huss stands adjudicated insane, and if it is intended now to determine whether that condition still obtains, this may be accomplished by bill in equity filed in his behalf by his wife or next friend, as expressly provided in Section 62.32, Florida Statutes, 1941, and F.S.A.

Affirmed.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.